## Commonwealth ex rel. O'Rourke, Appellant, *v.* Davis.

*School law—Selection of school sites in Philadelphia—Acts of March* 3, 1818, *P. L.* 124; *April* 16, 1845, *P. L.* 502; *February* 2, 1854, *P. L.* 21; *April* 21, 1855, *P. L.* 264; *April* 5, 1867, *P. L.* 779; *March* 15, 1870, *P. L.* 437; *June* 1, 1885, *P. L.* 37; *April* 25, 1889, *P. L.* 50.

The board of public education of the city of Philadelphia, and not the councils of the city, is empowered to select and choose sites for the public schools of the city. The members of the board of public education, therefore, cannot be compelled to draw a warrant for the purchase money of a lot selected and purchased by the city councils for school purposes.

While the city councils have no power to choose the site of a school building, there can be no objection to an ordinance of councils directing the city solicitor to examine and approve the title, and authorizing him to cause a conveyance of a lot to be made to the city for school purposes, provided the site has been selected by the board of public education.

Argued March 25, 1901. Appeal, No. 234, Jan. T., 1900, by plaintiff, from order of C. P. No. 4, Phila. Co., March T., 1900, No. 89, refusing mandamus in case of Commonwealth ex rel. Michael O'Rourke *v.* Charles E. Davis and others, constituting the department of education under the act of June 1, 1885. Before Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Petition for mandamus.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to award mandamus.

*E. Hunn Hanson*, with him *David W. Sellers*, for appellant, cited: City of Phila. v. Johnson, 47 Pa. 382; Perrott v. Phila., 83 Pa. 479; Com. v. Phila., 176 Pa. 588; Com. v. Phila., 180 Pa. 12.

*James Alcorn*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellee, cited: Phila. v. Johnson, 47 Pa. 382; Perrott v. Phila., 83 Pa. 479; Phila. v. McManes, 175 Pa. 28.

Opinion by Mr. Justice Mestrezat, May 13, 1901:
The city of Philadelphia by an ordinance of councils ap-

proved June 17, 1898, authorized a loan of " $900,000 for the completion of the boys' high school and erection of new school buildings," and the councils by an ordinance approved December 28, 1898 made an appropriation, being item 59 of the annual appropriation to the board of public education for the year 1899, " for purchase of lots and erection of new buildings, $300,000, subject to future legislation by councils." By an ordinance approved March 27, 1899, the councils directed the city solicitor to examine the title to a certain lot of ground in the 25th ward, owned by Michael O'Rourke, the relator, and if he approved of the title, he was instructed to cause a conveyance of the lot to be made to the city for school purposes, the price therefor not to exceed the sum of $25,000, to be paid out of item 59 in the annual appropriation to the board of public education for the year 1899. The city solicitor examined and approved the title and for a consideration of $25,000, caused a conveyance of the lot to be made to the city for school purposes.

Mr. O'Rourke requested the board of public education to draw a warrant in his favor for the consideration named in the deed, which it declined to do. He thereupon presented his petition to the court below, setting forth the facts and praying for an alternative mandamus against the members of the board. The writ was awarded. The respondents made a return to the writ and averred as reasons for their refusal to draw the warrant in favor of the relator, that the lot of ground had not been selected or chosen by them, or by any of their committees, that the lot is utterly unfit for the purposes of a school building, that the price was too high to justify the respondents in selecting it, and more desirable pieces of ground in that locality were offered for less price; that by virtue of certain acts of assembly therein cited the respondents are alone invested with authority to procure and select lots for school purposes, and as the lot of relator was not selected or procured by them they cannot be required to draw a warrant against the appropriation made to them for the purchase of school lots and erection of school buildings. It is further averred in the return that as the councils appropriated the sum of $300,000 " for the purchase of lots and erection of new buildings," the right to expend and use the said appropriation for the purposes men-

tioned is vested solely in the respondents, and is not subject
to the control or direction of the councils. To the return the
relator filed a demurrer alleging that the matters in the return
" are not sufficient in law to preclude the relator from having
the writ of peremptory mandamus." The court below over-
ruled the demurrer and refused the mandamus. This is as-
signed for error.

There is but a single question involved in this controversy
and that is, whether the board of public education of the city of
Philadelphia is empowered to select and choose sites for the
public schools of the city. If that authority is vested in the
board, its members cannot be compelled to draw a warrant for
the purchase money of a lot selected and purchased by the city
councils for school purposes. The court below held that the
power to make the selection of the lot was in the board, and we
agree with the conclusion.

The Act of March 3, 1818, P. L. 124, erected the city and
county of Philadelphia into " the first school district of the state
of Pennsylvania," and divided it into seven sectional districts,
the city being designated as " the first section." Each sectional
district appointed a certain number of directors who elected
" one suitable person from among themselves, for every six
directors, to be members of a select body, to be called ' the
controllers of the public schools for the city and county of
Philadelphia.'" This body was empowered to determine the
number of schoolhouses to be erected in every section, to limit
the expense of erecting and establishing the same, to establish
a model school and to provide suitable books for the pupils, and
it had general superintendence over the schools. The Act of
April 16, 1845, P. L. 502, made the controllers a body politic
with power to take and hold real estate for school purposes and
to dispose of the same, and vested in them all property held in
trust for former boards. The Act of February 2, 1854, P. L.
21, provided that no money should be withdrawn from the city
treasury except it had been previously appropriated by councils
for the purpose for which it was drawn, and required the con-
trollers to furnish the councils the amount that would be neces-
sary for the support of the public schools, thereupon the councils
were to direct the amount to be applied and paid by the city
treasurer to schools and other purposes. The act also required

the directors of each ward to elect one of their number a controller, and vested the title to all school property in the city of Philadelphia. By the Act of April 21, 1855, P. L. 264, no contract for the construction of a schoolhouse could become binding on the city without an ordinance therefor. The Act of April 5, 1867, P. L. 779, authorized the court to appoint the board of controllers, and the Act of March 15, 1870, P. L. 437, designated it as " the board of public education of the first school district of Pennsylvania." In the act of February 18, 1871, it is provided : " Whenever the board of public education of the city of Philadelphia has determined upon the erection of a new schoolhouse, and the councils of the city of Philadelphia have made an appropriation of money to build the same, all matters in connection with the erection of said schoolhouse shall be under the direction of said board of public education." The Act of June 1, 1885, P. L. 37, continued the department of public education as one of the departments of the city of Philadelphia. By the Act of April 25, 1889, P. L. 50, it is provided that " whenever the board of public education . . . . shall be unable to procure such sites as they may deem desirable or expedient for the erection of schoolhouses . . . . by agreement with the owner of the land, it shall and may be lawful for the said board . . . . after the passage of the ordinance by the councils authorizing such entry and occupancy, to enter upon and occupy grounds sufficient for the purpose, and to use and occupy the same for the purpose of erecting thereon a schoolhouse." The act then provides for the assessment of damages.

The above legislation is all that has been called to our attention which affects the question under consideration. In 1864, this court in Johnson v. City of Philadelphia, 47 Pa. 384, said : " From an examination of the acts of assembly, to which our attention has been directed in this case, it is apparent that everything pertaining to the public schools, within the city and county of Philadelphia, has been committed to the board of controllers, excepting only the public purse, which has been kept carefully in the hands of the city councils." The legislation since that date has more surely and firmly placed with the board of public education everything pertaining to the public schools of the city. The financial affairs of the city are controlled by the councils, and without the authority of that body, previously obtained, no

funds of the city can be used for any purpose. That must be conceded. But having appropriated the funds for school purposes, the duty of the councils has been performed, and that of the board of public education commences. The ordinance of December 28, 1898, placed the sum of $300,000 to the credit of the board of public education " for the purchase of lots and erecting new buildings." For these purposes, this fund was at the command of the board to be disbursed on warrants drawn by it. If such was not the purpose of the appropriation and it was not the intention that the board should select the site and pay for it out of the appropriation, why should the councils put the money in the hands of the board for the purpose? If the power of choosing the location for the schoolhouse was vested in the councils, they should not have appropriated to the board the money " for the purchase of lots," but should have retained the fund in their own hand and applied it directly to that purpose. This appropriation was for two purposes, viz : " for the purchase of lots and erecting new buildings." The money for both objects was under the control of the board and was to be expended by it in carrying out the purposes for which the fund was appropriated. The act of 1818 authorized the controllers to determine the number of schoolhouses ; the act of 1871 required the board of public education to determine when a house should be built and placed under its direction " all matters in connection with the erection of said schoolhouse," and the act of 1889 empowered the board, if it should be unable to procure a desirable or expedient site for a schoolhouse by agreement with the owner, to condemn sufficient ground for the purpose. The intention of this legislation is manifest. The board was to select a site and erect a new building when it was needed with the funds appropriated by councils for the purpose. The selection of the site was a matter pertaining as much to the public schools as the erection of the building. Both legitimately belonged to the board of public education, created for the special purpose of effectively carrying out the public school system of the city of Philadelphia.

There can be no objection to an ordinance of councils directing the city solicitor to examine and approve the title and authorizing him to cause a conveyance of the lot to be made to the city for school purposes. This is the proper procedure to enable the

city to obtain a title to the premises. The ordinance of March 27, 1899, was to that extent proper and necessary. An appropriation to pay the purchase money of a lot had been made by a prior ordinance. Hence none need have been made in the ordinance of March 27. But this ordinance was premature. The board of public education had not selected or procured a site for the schoolhouse, and until it had done so the councils could take no steps to secure the title. There was no occasion for the ordinance at the time it was passed.

It follows that the board of public education not having selected the relator's lot for school purposes is not required to draw a warrant on the school fund to pay for the property. That is the only question for determination and the other questions suggested by the opinion of the court below and on the argument here need not be considered.

There was no error in refusing the mandamus and the judgment is affirmed.