## Lynch v. Jefferson Township School District.

*Nuisance—School district—Maintenance of nuisance by school district—Outside toilets—Pollution of well.*

The fact that property is owned by a municipal or quasi-municipal corporation or public charity (*i. e.*, a school district) does not authorize the owner to maintain upon it a nuisance injurious to surrounding property nor exempt such owner from liability to one who has suffered special injury from the nuisance.

Statutory demurrer.  C. P. Fayette Co., Dec. T., 1924, No. 151.

*Sturgis & Sturgis,* for plaintiff.

*Shelby, Henderson & Hackney,* for defendant.

VAN SWEARINGEN, P. J., Nov. 6, 1924.—This case is before the court on questions of law raised in an affidavit of defence in lieu of demurrer, in accordance with the Practice Act of May 14, 1915, P. L. 483. The action is in trespass to recover the sum of $7500 from the defendant, "a duly organized school district having its board of school directors all existing under and in compliance with the laws of the State of Pennsylvania." The statement of claim sets forth that the plaintiff is a resident of the village of Newell and is the owner of a lot of ground on which is erected two houses and on which also there is a well of water of a depth of approximately forty feet, being to a depth below the level of the Pittsburgh vein of coal. The well is located at or near the northeastern boundary of said property, and on that portion thereof which adjoins a street or road that separates the plaintiff's property from that of the defendant. Immediately across the road from plaintiff's property and fronting and abutting thereon is certain property of the defendant upon which is erected two school buildings. The Pittsburgh vein of coal has been mined and removed therefrom, as well as from other adjoining lands.

During the year 1923, and a part of the year 1924, the defendant constructed and maintained, or caused to be constructed and maintained, on its said property, certain outside toilets for the use of some 300 or 400 school children, and at the time mentioned the same were used by the school children as such. In the year 1923 the defendant, by its employees, removed the refuse from the toilets and deposited the same in the old mine workings on its own land, immediately across the road from the land of the plaintiff, and later, in order to drain the waste and sewage from the toilets aforesaid, the defendant caused bore-holes to be drilled through the surface of the ground on its property into old abandoned mine workings immediately beneath the surface of defendant's property, the coal for all practical purposes having been removed therefrom, and by means of troughs, conducted the waste and sewerage from said toilets into said abandoned mine workings within 40 or 50 feet of plaintiff's well, where it stands stagnant with no means of escape, and since being so deposited, has seeped and drained from natural causes and gravitation in and through the strata separating it from plaintiff's well into the well, hopelessly contaminating and polluting it with bacteria and other germs, thus rendering the well unfit for any use whatever.

In the affidavit of defence in lieu of demurrer, the defendant alleges (1) that the defendant school district is merely an agent of the Commonwealth of Pennsylvania, created involuntarily by the legislature, and having certain limited powers and responsibilities. It is a mere agent of the State and a public charity and cannot, therefore, be sued in the present form of action; (2) that the general assembly of the Commonwealth of Pennsylvania has not enacted any statute giving a right of action against a school district for the cause of action alleged in the statement of claim;  (3) that the plain-

tiff's statement of claim does not set forth any cause of action against the defendant.

In Ford v. School District, 121 Pa. 543, it was held: "In Pennsylvania a school district is but an agent of the Commonwealth, and as such a quasi-corporation for the sole purpose of administering the Commonwealth's system of public education; it is, therefore, not liable for the negligence of school directors or of their employees." It was said in course of the opinion: "But more than this, the act of assembly provides no fund out of which the directors can pay damages resulting from their own misconduct or that of their officers. The Act of May 8, 1854, § 28, P. L. 623, authorizes the several school boards of the Commonwealth to levy and collect a tax which shall, together with such additional sums as the district may be entitled to receive out of the State appropriation and from other sources, be sufficient and necessary to keep the schools of the district in operation not less than four nor more than ten months in the year. It will thus be seen that the entire resources of a district are to be appropriated to the maintenance of its schools, and no other tax than for such use can be levied, except one of a special character, authorized by a subsequent section and devoted exclusively to the purchase of land and erection of buildings necessary for educational purposes. As, then, these districts can have no fund out of which to pay damages, such as are claimed by the plaintiff in this case, their recovery would be to no purpose."

In that case the plaintiff was a pupil in the public schools. She was standing with other pupils near the stove in the school-room, in which the janitor was attempting to kindle a fire. Failing to produce the desired result, he left the room and soon returned with a dish of crude petroleum, which he threw into the stove. The result was an explosion, by which the plaintiff was severely burned and otherwise injured. The board of school directors had been notified twice of this method of kindling fires by its janitor and warned of the danger of permitting its continuance. Commenting on the case at some length, it was said by Mr. Chief Justice Gordon: "It is very true that in support of the plaintiff's contention we have many analogous cases where damages have been recovered against townships and other municipalities, resulting from the negligence of their officers in the construction and maintenance of their streets and highways, and for such cause the public treasury has been obliged to make good private loss. The reason for this rule is not very obvious. It is based upon the idea that, as upon municipalities the legislature has imposed the duty of maintaining public highways, therefore, they are responsible for a neglect of that duty. But as the same reason will apply to all cases in which a duty is imposed, so should the same rule be applied to the police, fire, sanitary and pauper departments of municipalities, though, as we have seen, it does not so apply. All we can say is, that for the one class of cases we have precedent on which to rest, and in the other, we have no such precedent but rather the contrary. Reason is all with the latter view of the subject, for the conclusion that the public should be held responsible for the misconduct of its supervisors of highways, is just as illogical as that it should be so held for the misfeasance of its constables and overseers of the poor. But we are not disposed to quarrel with decisions or unsettle old and well established rules; hence, we have but to say that, whilst the doctrine respondeat superior does apply to townships, boroughs and cities, so far as streets and roads are concerned, it does not apply to school districts."

"But, on the other hand," as said by Judge Keller in Brinton v. Shenango Twp. School District, 81 Pa. Superior Ct. 450, "it has been held that this immunity, as respects governmental agencies, does not extend to cases of nuisance, as distinguished from negligence, and the fact that property is owned

and controlled by a municipal or quasi-municipal corporation or public charity does not authorize the owner to maintain upon it a nuisance injurious to surrounding property, nor exempt such owner from liability to one who has suffered special injury from such nuisance. In such cases, the doing of the wrongful act causes direct injury to the property of another outside the limits of the public work, not consequential, such as follows a purely negligent act or omission."

In Briegel v. City of Philadelphia, 135 Pa. 451, where the action was in trespass to recover damages for injuries to plaintiff's houses, alleged to have been caused by the negligence of the city in not properly constructing the plumbing and drainage connected with the privy well of a public school building owned and maintained by the city, it was said by Mr. Justice Mitchell: "But the learned counsel for the city have made an urgent and ingenious effort to bring this case within the ruling in Ford v. School District, 121 Pa. 543. The distinction, however, is plain. That case was an action for the negligence of the janitor of a school building, and was decided on the ground that, under the Pennsylvania statutes, school districts are agencies of the Commonwealth for a special and limited purpose, with no funds under their control but public moneys devoted to a special charity and not divertible, even indirectly, to any other use. . . . The present action differs from the class we have been considering, it being against the City of Philadelphia, and in being an action for nuisance by the negligent use of property. . . . But in the class of cases to which the present belongs, injuries arising from the misuse of land, there has never been any substantial hesitation in holding cities liable. The ownership of property entails certain burdens, one of which is the obligation of care that it shall not injure others in their property or persons by unlawful use or neglect."

In Rosenblit v. Philadelphia, 28 Pa. Superior Ct. 587, it was said by Judge Porter: "A school district has its public as well as its private rights and duties. It may, under its taxing power, impose a charge upon land, but it has no right to cause filth to be discharged upon the property of a neighbor. The right of a municipality to maintain upon premises devoted to public use anything which became a nuisance to surrounding property was considered by Judge Sharswood in Shuter v. Philadelphia, 3 Phila. 228, and he thus states his conclusion: 'If it is actually impossible to make such a reservoir watertight, the only result is that they must pay damage or become themselves owners of all the property within reach of the influence of the nuisance.' . . . The mutual and reciprocal rights and duties of owners of adjoining land are in no manner affected by the fact that one of the properties may be dedicated to a public use. Briegel v. City of Philadelphia, 135 Pa. 451, came under that line of cases in which it has been held that the question was not one of negligence or no negligence, but of nuisance or no nuisance. . . . The fact that property is owned and controlled by a municipal or quasi-municipal corporation or public charity does not authorize the owner to maintain upon it a nuisance injurious to surrounding property nor exempt such owner from liability to one who has suffered special injury from such nuisance. The injury which was redressed in Briegel's case was a wrong against his right of private property, and the duty which was violated by the school authorities was not connected with the exercise of their public governmental function, but was one which is always an incident of the ownership of land without regard to the use to which it is devoted."

Nowhere in plaintiff's statement of claim in the present case are the injurious acts of the defendant termed negligence, and the case was not presented to the court by plaintiff's counsel on grounds of negligence. The acts com-

plained of were not acts of negligence merely, but the conditions caused to exist there by reason of the acts complained of constituted a nuisance, for which, we are of opinion, the school district is liable in damages.

And now, Nov. 6, 1924, this case having been set down for hearing on questions of law raised in the affidavit of defence, the questions of law so raised are decided against the defendant, with leave to the defendant to file a supplemental affidavit of defence to the averments of fact contained in the statement of claim within fifteen days from date.

From Luke H. Frasher, Uniontown, Pa.

NOTE.—Syllabus by the Court.