Board of Public Education of the First School District of Pennsylvania *v.* Ransley, Appellant.

209          51
28 SC  591
28 SC  595

209          51
32 SC  110

*School law—Philadelphia—First school district of Pennsylvania—Controllers—Purchase of supplies.*

Under the Acts of March 3, 1818, P. L. 124, January 23, 1821, P. L. 13, February 9, 1835, P. L. 22, April 16, 1845, P. L. 502, February 2, 1854, P. L. 21, March 15, 1870, P. L. 437, and June 1, 1885, P. L. 37, the school system of the city of Philadelphia, is wholly under the control of the board of public education, except in the one matter of raising funds for school purposes. The Act of April 4, 1903, P. L. 153, creating the department of supplies, does not change the power of the board of education to administer the public school system, or take from it the right to purchase supplies for school purposes.

Argued March 31, 1904. Appeal, No. 75, Jan. T., 1904, by defendant, from decree of C. P. No. 2, Phila. Co., Dec. T., 1903, No. 830, on bill in equity in case of the Board of Public Education of the First School District of Pennsylvania *v.*

Harry C. Ransley, President of Select Council of the City of Philadelphia et al., and Frederick J. Shoyer, Director of the Department of Supplies of the City of Philadelphia. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Bill in equity for an injunction.

The relief prayed for was:

(*a*) A decree enjoining defendants from appropriating moneys deemed necessary for school purposes for 1904 to the department of supplies.

(*b*) A decree that it is the duty of the defendants to appropriate such moneys to complainant.

(*c*) An injunction restraining the director of the department of supplies from demanding or receiving any apropppriation for the purchase of supplies for said school district, and for advertising for said supplies or distributing or administering the same.

(*d*) General relief.

The court in an opinion by SULZBERGER, P. J., entered a decree in accordance with the prayers of the bill.

*Error assigned* was the decree of the court.

*Ernest Lowengrund* and *James Alcorn*, assistant city solicitors, with them *John L. Kinsey*, city solicitor, and *D. T. Watson*, for appellant.—The board of public education is a department of the city of Philadelphia : Perrot v. Phila., 83 Pa. 479; Com. v. Decamp, 177 Pa. 112; Com. v. Philadelphia, 176 Pa. 588 ; Bailey v. Philadelphia, 167 Pa. 569 ; Com. v. Davis, 199 Pa. 278.

The " business of the city," as those words are used in the act of April 4, 1903, include the purchase of supplies for the public schools : Com. v. Philadelphia, 176 Pa. 588 ; Johnston v. City, 113 Fed. Repr. 40 ; Com. v. Davis, 199 Pa. 278.

*John G. Johnson*, for appellee.—The title of the act of 1903 is misleading and defective if it was intended to regulate the purchase of supplies for public schools of the first school district.

The act itself discloses no intention to interfere with the existing system of purchasing school supplies : Ayars's App., 122 Pa. 266.

If the act of 1903 be construed as the city claims it should be, it is unconstitutional : Chalfant v. Edwards, 173 Pa. 246 ; Sugar Notch Borough, 192 Pa. 349 ; Com. v. Gilligan, 195 Pa. 504.

OPINION BY MR. JUSTICE BROWN, April 11, 1904 :

By the constitution of 1790 the people of this commonwealth imposed upon the legislature the positive duty of establishing schools throughout the state for the free education of the poor. The constitutional provision was : " The Legislature shall, as soon as conveniently may be, provide, by law, for the establishment of schools throughout the state, in such manner that the poor may be taught gratis." In carrying out this mandatory direction, the Act of March 3, 1818, P. L. 124, was passed, entitled " An Act to provide for the education of children at public expense within the city and county of Philadelphia." With constantly increasing interest in the education of the young, the legislature, in reflecting public sentiment, from time to time provided for public schools, created school districts, and, finally, by the Act of May 8, 1854, P. L. 617, established a system of common school education for all the counties of the commonwealth. What was first a constitutional requirement, that the legislature should establish schools for the education of the poor " gratis," in time became a universal demand for free education for all classes, and, for years, to thousands of the children of the rich as well as the poor, common schools have been the only colleges. By our present constitution the legislature is to provide for the education of all the children of the commonwealth through " a thorough and efficient system of public schools." A review of constitutional provisions and legislative enactments clearly shows that the state has regarded the education of its children as one of its duties and functions, the performance of which it has as yet delegated to no municipality. Though by the act of 1854 every township, borough and city of the commonwealth is made a separate school district, its affairs are not managed by the township or municipal authorities, but by boards of school

directors or controllers elected for that purpose. " School districts, as quasi corporations belonging to the public school system, have no necessary connection with municipal government:" Ayars's Appeal, 122 Pa. 266. " School directors are by no means municipal-officers. They are not invested with any of the municipal powers, nor are they charged with the performance of municipal functions :" Chalfant v. Edwards et al., 173 Pa. 246. Though it might be interesting to dwell upon this, we need not now do more than call attention to it in passing upon the question before us of the right of the board of education of the first school district of Pennsylvania to continue to purchase supplies for its public schools. Whether this right has been taken away from it and transferred to the department of supplies of the city of Philadelphia, depends upon the proper construction of statutory provisions.

By the act of March 3, 1818, the first school district of the state of Pennsylvania was established. The district was to be coterminous with the county of Philadelphia. It was divided into sections, the city of Philadelphia constituting the first, and the remaining portion of the county the other three sections. School directors were to be appointed for the different sections, and they, in turn, were to select representatives to be controllers over the whole district. These controllers, by the 6th section of the act, were authorized to draw orders upon the county treasurer for any sum or sums of money necessary for carrying the " act into complete execution." To do so, schoolhouses were to be erected and maintained within the district ; and, by the 9th section of the act, the directors were to " provide all things necessary for maintaining and conducting the schools in their respective sections." By the 5th section the controllers themselves were authorized " to provide such suitable books as they shall deem necessary for the use of the pupils belonging to the different schools." The predecessors of the appellee had full authority, by the act of 1818, to make requisitions upon the treasury of the county of Philadelphia for whatever moneys might, in their judgment, be needed by them or the directors for the maintenance and support of the public schools under their supervision and control.

The Acts of January 23, 1821, P. L. 13, and February 9, 1835, P. L. 22, are the next legislation to be noticed. By

them the school controllers could annually require the levying of taxes sufficient for school purposes, which, when collected, were to be placed to their credit and be at their disposal.

The next act to engage attention is that of April 16, 1845, P. L. 502, by which the controllers of the public schools of the several sections of the city and county of Philadelphia were united as one corporate body, to be known as ". The controllers of the public schools of the first school district of Pennsylvania." This title was changed by the Act of March 15, 1870, P. L. 437, to "The Board of Public Education of the First School District of Pennsylvania," and it succeeded to all the powers and privileges conferred upon and exercised by the board of controllers. The act of 1845 did not affect the power of the controllers to expend all moneys raised by their authority for school purposes. Up to the passage of that act the question now raised by the appellant could not have arisen, for the controllers of the schools were supreme in the expenditure of the moneys of the district.

We come now to the Act of February 2, 1854, P. L. 21, which is entitled "A further supplement to an act entitled ' An act to incorporate the city of Philadelphia.' " Its 23d section is : " Immediately upon the organization of the said board of controllers, all property real and personal, all trusts and trust funds, and all estate, rights, privileges and immunities whatsoever, that are or shall be by law or otherwise vested in, owned, possessed or enjoyed by, or that in any wise appertain to the corporation created by the act of assembly passed April sixteenth, Anno Domini, one thousand eight hundred and forty-five, entitled ' An act relating to the controllers of the public schools of the city and county of Philadelphia,' shall be vested in and be held, possessed and enjoyed by the city of Philadelphia, subject to all the trusts, conditions and liabilities now legally applicable thereto, and all sums of money due, payable to or received by the board of controllers, shall be paid into the city treasury, and all sums expended by or for the purposes of the board of controllers, shall be paid by the city treasurer, upon orders drawn under appropriations regularly made by councils." By this act the controllers of the public schools were no longer to raise by taxation the moneys needed for school purposes. The municipal authorities were to levy

and collect the same, but the controllers were, on or before March 1, of each year, to furnish to councils an estimate of the amount that, in their judgment, would be required for the current fiscal year for the support of the public schools.

By the twenty-third section of the act the moneys for school purposes were to be "paid by the city treasurer, upon orders drawn under appropriations regularly made by councils." By whom were these orders to be drawn? Manifestly by the controllers of the public schools, for no one else was authorized by the act to draw them, and the power theretofore given them to do so was not taken from them. Since the passage of that act all orders upon the treasurer of the city of Philadelphia for moneys needed for school purposes have been drawn by the controllers and the appellee, their successor, and honored without question. If the authority of the controllers to continue to make their requisitions upon the city treasurer was not given in express words by the act of 1854, it was continued by clearest implication.

The act of 1854 did not, as is contended by one of the learned counsel for appellant, vest "all the power in reference to education in the city of Philadelphia." The title to all the property, real and personal, that belonged to the controllers of the public schools, all trusts and trust funds, and all estate, rights, privileges and immunities, owned or enjoyed by them became vested in the city of Philadelphia; but the board of controllers was continued and recognized as such by the very words of the act. Not a line can be found in it indicating any intention of the legislature to interfere with its control and management of the schools, which necessarily involve the power to furnish them with proper supplies. It is to be noted that no powers of the board, in the administration of the affairs of the schools, are taken from it by the act, and the power of furnishing supplies, so wisely lodged in it by the act of 1818, is not to be taken from it by anything short of clear and unequivocal words of the legislature. These are not found in the act of 1854. By its fiftieth section provision is made for the establishment and regulation of different departments of the city, to wit: "For law, police, finance, surveys, highways, health, water, gas, fire, the poor, the city proper and the public grounds," and over these departments, through the mayor and proper

committees, the councils were to maintain a supervision; but the controllers of the public schools are not named in the classification of departments, and are, therefore, not included in it. Expressio unius est exclusio alterius. Over the board of controllers and the exercise of their powers, necessary to the proper control, management and administration of the affairs of the schools, the legislature gave no councilmanic supervision. We are all of one mind with the learned judge below, that "the whole legislation of 1854 therefore left the controllers of the public schools in undivided control of the administration and management as well of the school funds as of the realty, and we fail to find in it any authority to supersede the board of controllers in the exercise of any essential function of administration." In Johnson v. City of Philadelphia, 47 Pa. 382, with the act of 1854 before him, WOODWARD, J., in speaking for the court, said: "From an examination of the acts of assembly, to which our attention has been directed in this case, it is apparent that everything pertaining to the public schools, within the city and county of Philadelphia, has been committed to the board of controllers, excepting only the public purse, which has been kept carefully in the hands of the city councils. The controllers have power to establish schools, to provide school books, to make rules and regulations for the conduct of the schools, to appoint teachers, and to fix their salaries, but they have no power to raise or appropriate revenues." In Commonwealth v. Davis, 199 Pa. 278, our Brother MESTREZAT said, in referring to the act of 1854: "The legislation since that date has more surely and firmly placed with the board of public education everything pertaining to the public schools of the city. The financial affairs of the city are controlled by the councils, and without the authority of that body, previously obtained, no funds of the city can be used for any purpose. That must be conceded. But having appropriated the funds for school purposes, the duty of the councils has been performed, and that of the board of public education commences."

If the appellee is to be interfered with by the city of Philadelphia in properly administering the affairs of the public schools by taking from it the power of determining what supplies are needed and then purchasing them, the right of the city, if it

exists, to so interfere, must be found in the acts of June 1, 1885, P. L. 37, and of April 4, 1903, P. L. 153. The first, known as the Bullitt bill, is entitled "An act to provide for the better government of the cities of the first class in this commonwealth." Nothing in the title indicates any intention of the legislature that the school system of the first school district of Pennsylvania is to be in any manner affected by the act; and, reading it through, no such intention, undisclosed in the title, can be found. There is not a single direct reference in it to the board of education of the city of Philadelphia. By article two there are to be nine executive departments, the seventh being the department of education. A separate article is subsequently devoted to each of the executive departments, except that of education and the sinking fund commission, and provision is made in detail for the organization and management of each. The department of education is not mentioned again, except in article nine, which, in a line, provides that it " shall continue as now established by law." As established by law up to that time, it was the first school district of Pennsylvania, clothed with the power of administering the affairs of the public schools in that district expressly conferred upon it by the legislature ; and that authority had not transferred to the city the control of the schools as one of its affairs. Public education had not become one of its municipal functions or part of its business as a city. When the act of 1903 was passed the situation was unchanged, and as its provisions are that the department of supplies shall purchase and supply " all articles of personal property required in the conduct of the business of the city," no time need be consumed in showing that they do not apply to a business which the city is not conducting.

Decree affirmed and appeal dismissed at appellant's costs.