## Rosenblit *v.* Philadelphia, Appellant.

*Negligence—First school district of Pennsylvania—Philadelphia—Injury to pupil in school building—Municipalities—School Law.*

The city of Philadelphia which is coterminous with the first school district of Pennsylvania, and has legal title to the public school buildings therein, is not liable in damages for injuries to a pupil in a public school by a fall of a part of the plastering from the ceiling of a schoolroom, although the board of education and its architect had several weeks' notice of the defect in the ceiling before the accident occurred. The ground for the city's exemption in such a case is that the school buildings are in the actual possession and control of the sectional school board and board of public education, and that the city has no voice in the selection of the officers, agents or architects of the school district, and no power to remove them.

The negligence, if any there was, of the authorities of the first school district of Pennsylvania was in the failure to discharge their public duty, to provide and maintain suitable and adequate accommodations for the public

schools. That duty did not grow out of their right to control and manage this particular building or any other property, but was founded in the express provisions of the legislation which created the school district, provided the officers to represent it, and regulated the system of public education. That there could be no recovery from the school district for injuries to a pupil resulting from negligence, of this nature, upon the part of the officers of the district is definitely ruled by the authorities. Even if the school district was liable under such circumstances, however, the city of Philadelphia would not be liable as a municipal corporation. The city in its corporate capacity had no voice in the selection of the officers whose negligence resulted in the accident, it could not remove them from office, nor could it supervise or control them in their management of the school property. They were in the discharge of their duty to repair the school buildings, wholly independent of the city authorities, and the city is not liable for an accident arising from their negligence. · The fact that the legal title was in the city could not affect the determination of this question, for at the time of the alleged negligence the city did not and of right could not manage or control the property. Per PORTER J.

Argued Oct. 18, 1904. Appeal, No. 261, Oct. T., 1903, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1900, No. 316, on verdict for plaintiff in case of Gussie Rosenblit by his next friend and father, Samuel Rosenblit and Samuel Rosenblit in his own right v. City of Philadelphia. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BRÉGY, J.

The opinion of the Superior Court states the case.

Verdict for Samuel Rosenblit for $50.00 and for Gussie Rosenblit for $300, subject to question of law reserved.

The court subsequently entered judgment on the verdict.

*Error assigned* was in overruling motion for judgment for defendant non obstante veredicto.

*J. W. Catharine,* assistant city solicitor, with him *Joseph S. MacLaughlin, Harry T. Kingston* and *John L. Kinsey,* city solicitor.—It is submitted that the city of Philadelphia is not liable in damages for injuries sustained by a pupil in consequence of a defect in a public school building, as the duty to construct, maintain, supervise and control all public school buildings in the county of Philadelphia is exclusively vested

by legislative enactment in the board of public education and the several sectional school boards of the first school district of Pennsylvania: Board of Public Education v. Ransley, 209 Pa. 51; Ayars' App., 122 Pa. 266.

The school authorities are state agents: Ford v. School District, 121 Pa. 543; Erie School Dist. v. Fuess, 98 Pa. 600.

Where the injury complained of results from the negligent performance or the nonperformance of a governmental duty or function, no liability attaches to the principal. And this is especially true where, as here, the officials whose negligence is complained of are absolutely free of municipal control: Maxmilian v. New York, 62 N. Y. 160; Bailey v. Mayor, etc., of New York, 3 Hill, 531; Ashby et al. v. Erie, 85 Pa. 286; Winpenny v. Phila., 7 Phila. 111; Winpenny v. Phila., 65 Pa. 135; Alcorn v. Phila., 44 Pa. 348; Hand v. Phila., 8 Pa. C. C. Rep. 213: Fox v. Philadelphia, 208 Pa. 127; Elliott v. Phila., 75 Pa. 347; Kansas City v. Lemen, 57 Fed. Repr. 905; Ford v. Kendall Boro. School Dist., 121 Pa. 543; Finch v. Board of Education, 30 Ohio, 37; Donovan v. Board of Education, 85 N. Y. 117; Clark v. Waltham, 128 Mass. 567; Steele v. Boston, 128 Mass. 583; Curran v. Boston, 151 Mass. 505 (24 N. E. Repr. 781).

*Glenn C. Mead,* with him *James Gay Gordon,* for appellees.—This case is ruled by Powers v. Philadelphia, 18 Pa. Superior Ct. 621; Barthold v. Philadelphia, 154 Pa. 109; Briegel v. Philadelphia, 135 Pa. 451.

OPINION BY PORTER, J., October 9, 1905:

This action was brought to recover damages for injuries sustained by a minor, while in attendance as a pupil in a public school, by a fall of a part of the plastering from the ceiling of the schoolroom. The plaintiff's statement averred that, " The defendant being the owner of the said schoolhouse, . . . . and having the entire management and control thereof, it became and was the duty of the defendant to keep the said schoolhouse with the appurtenances and premises aforesaid in such good order and repair, that the lives and limbs of the children, scholars and pupils who might be properly and lawfully therein would not be endangered;" that the defendant negligently and

wrongfully allowed the ceiling of said room to be and continue out of repair, and in consequence thereof the ceiling fell and injured the plaintiff who was in attendance as a pupil. There was at the trial no dispute as to the fact that, on January 10, 1900, the plastering fell from several square feet of the ceiling of the public schoolroom in which young Rosenblit was in attendance as a pupil, and he was thereby injured. The evidence upon which the plaintiff relied to establish negligence upon the part of those in authority was, in substance, that there had been a fire in the building in 1897, that the building at that time had been flooded with water and the plastering throughout the building been wet and so weakened that it had from time to time fallen in other rooms of the building, that a small piece of plastering had, about a month prior to this accident, without injury to any person, fallen from the ceiling of the room in question, and that about the same time cracks had been noticed in that part of the ceiling from which the plastering fell about four weeks later and injured the plaintiff; that the teacher who had charge of the room directed the attention of the supervising principal of the school to the condition of the ceiling, that the principal notified the local school board, the sectional school board of the tenth ward, and the board of public education, and that the architect employed by the board of public education came and examined the defective ceiling, but permitted it to remain without any repair. The evidence established that the building had been continuously used for public school purposes from a time long prior to the date of the fire referred to, that during all of said period the property had been in the actual possession of the sectional school board and the board of public education, that said school authorities managed and controlled the building and the school therein conducted, employed the teachers and janitor, that when repairs were needed the fact was reported to them, and that they through their own architects and employees determined the question of the necessity for repairs and when necessary made them. The plaintiff offered in evidence the special act of assembly entitled " A further supplement to an act, entitled 'An act to incorporate the City of Philadelphia' " approved February 2, 1854, P. L. 21, which evidence was for the purpose of showing that the title to the property was vested in the city

of Philadelphia.    This was the only evidence tending to show that the city, as a municipal corporation, was in any manner connected with the management of the school or the property in which it was conducted.    We must assume that the injury to the plaintiff as well as the negligence of the authorities responsible for the management of the school, and upon whom was the duty to repair the schoolroom, has been established by the verdict.    Can the city of Philadelphia be held liable to answer in damages for injuries suffered by a pupil in a public school because of the negligence of those upon whom was the duty to repair the school building, when both school and building are under the actual and exclusive control and management of the board of school directors of the section in which the building is located and the board of public education of the first school district of Pennsylvania, the boundaries of which district are identical with those of the municipal corporation ?

We held, in Powers v. City of Philadelphia, 18 Pa. Superior Ct. 621, that the city was liable for injuries to a pupil of a public school, suffered by reason of negligence in the maintenance of a defective board-walk running from the main school building to an annex on property owned by the city and devoted to the use of a public school.    It was assumed in the presentation of that case that the ownership of the property, the right to control and manage it and to determine when and how it should be repaired was in the city; the court considered the case as thus presented and the decision was founded upon the correctness of such presentation.    The evidence in the present case, considered in the light of the decision of the Supreme Court, in Board of Public Education v. Ransley, 209 Pa. 51, cuts the ground from under our former decision.    The evidence establishes that the city was not in the actual possession of the property and did not manage and control it.    The decision of the Supreme Court, above cited, determined that the municipal authorities did not have the legal right to control and manage the property.    Mr. Justice BROWN who spoke for the court in that case, said: " We are all of one mind with the learned judge below, that ' the whole legislation of 1854, therefore, left the controllers of the public schools in undivided control of the administration and management as well of the school funds as of the realty, and we fail to find in it any

authority to supersede the board of controllers in the exercise of any essential function of administration.'" And again, quoting from Johnson v. City of Philadelphia, 47 Pa. 382, "From an examination of the acts of assembly, to which our attention has been directed in this case, it is apparent that everything pertaining to the public schools, within the city and county of Philadelphia, has been committed to the board of controllers excepting only the public purse, which has been kept carefully in the hands of the city councils. The controllers have power to establish schools, to provide school books, to make rules and regulations for the conduct of the schools, to appoint teachers and to fix salaries, but they have no power to raise or appropriate revenue." And, from the language of Mr. Justice MESTREZAT, in Commonwealth v. Davis, 199 Pa. 278, in referring to the act of 1854: "The legislation since that date has more surely and firmly placed with the board of public education everything pertaining to the public schools of the city. The financial affairs of the city are controlled by the councils, and without the authority of that body, previously obtained no funds of the city can be used for any purpose. That must be conceded. But having appropriated the funds for school purposes, the duty of the councils has been performed, and that of the board of public education commences." The first school district of Pennsylvania is coterminous with the city of Philadelphia. It is divided into sections, each of which elects a board of school directors, and the management and control of the public school system of the entire district is supervised by the "Board of Public Education of the First School District of Pennsylvania," the members of which are appointed by the board of judges of Philadelphia county. The title of this central board was formerly "The board of school controllers of the first school district of Pennsylvania," but the Act of March 15, 1870, P. L. 437, provided that it should thereafter be designated by the name of the board of public education of the first school district of Pennsylvania. Mr. Justice BROWN, in commenting upon the relation of the officers of a school district to the municipality within the territory of which they exercise their functions, says : " A review of constitutional provisions and legislative enactments clearly shows that the state has regarded the education of its children

as one of its duties and functions, the performance of which it has as yet delegated to no municipality.   Though by the Act of May 8, 1854, P. L. 617 every township, borough and city of the commonwealth, is made a separate school district, their affairs are not managed by township or municipal authorities, but by boards of school directors or controllers elected for that purpose.   'School districts, as quasi corporations belonging to the public school system, have no necessary connection with municipal government:' Ayars's Appeal, 122 Pa. 266.   'School directors are by no means municipal officers.   They are not invested with any of the municipal powers, nor are they charged with the performance of municipal functions :' Chalfant v. Edwards, 173 Pa, 246. ''   The decision of the Supreme Court, in Board of Public Education v. Ransley, must be accepted as settling that the board of public education of the first school district of Pennsylvania, and the sectional boards, as established by law, are clothed with the power of administering the affairs of the public schools in that district and the management as well of the school funds as of the realty, expressly conferred by the legislature; and that there is no duty upon or power in the city to control the public schools as one of its affairs.   " Public education has not become one of its municipal functions or part of its business as a city."

The city had no voice in the selection of the officers of the school district and had no power to remove them.   Those officers, in the exercise of their functions and discharge of their public duty were free from municipal control.   If they failed to provide and maintain suitable and adequate buildings for the accommodation of the public schools, the municipality had no corporate right to interfere.   The duty to see that the school buildings were kept in proper repair was upon the officers of the school district, a quasi municipal corporation constituted for the sole purpose of the administration of the commonwealth's system of public education.   The officers were elected or appointed, in obedience to an act of the legislature, to perform a public service, the administration of the system of public schools, the maintenance and support of which the state has assumed as one of its duties and functions.   The school districts are mere agents of the state, for purposes purely governmental.   The officers through whom they must act are chosen

in the manner directed by the state, and their duties are defined by the sovereign power, and such officers perform a public service in which the district has no corporate interest and from which it derives no advantage in its corporate capacity, such officers cannot be regarded as servants of the school district, for whose negligence in the discharge of their duty the school district can be held liable, in the absence of a statute imposing such liability : Commonwealth v. Brice, 22 Pa. 211 ; Elliott v. Philadelphia, 75 Pa. 347 ; Boyd v. Insurance Patrol, 113 Pa. 269 ; Bucher v. Northumberland County, 209 Pa. 618 ; Donovan v. Board of Education of the city of New York, 85 New York 117 ; Finch v. Board of Education of the city of Toledo, 30 Ohio, 37 ; Hill v. Boston, 122 Mass. 344 ; Howard v. Worcester, 153 Mass. 426 (27 N. E. Repr. 11) ; Dosdall v. Olmsted County 30 Minn. 96 (14 N. W. Repr. 458) ; Dillon on Mun. Corp. sec. 968.    The question of the liability of a school district to answer in damages for injuries resulting from the negligence of the school directors in the discharge of their public duty was directly presented in the case of Ford v. School District, 121 Pa. 543, and, in discussing the nature of such civil subdivisions of the commonwealth and their liability for the negligence of their officers, Mr. Chief Justice GORDON said : " We may assert positively, and without hesitation, that school districts are but agents of the commonwealth, and are made quasi corporations for the sole purpose of the administration of the commonwealth's system of public education." The learned chief justice then refers to the constitutional provision requiring the general assembly to provide for the maintenance and support of a thorough and efficient system of public schools, and to appropriate at least $1,000,000 each year for that purpose, and, referring to the public school system, says : " If then this is not strictly and exclusively a state institution, a great public charity, we know not by what name it can properly be designated.    That the legislature has seen fit to have part of the money required for school purposes raised by local taxation cannot alter the character of the institution ; it is nevertheless public money as much as that which comes directly from the state treasury.    Police officers are not only paid by local taxation, but appointed or elected by municipalities, but as they derive their powers from the state and are

conservators of the public peace, municipalities are not responsible for their misfeasance." And, again, " But we are not disposed to quarrel with decisions, or unsettle old and well settled rules, hence we have but to say that whilst the doctrine respondant superior does apply to townships, boroughs and cities, so far as streets and roads are concerned, it does not apply to school districts."

The negligence, if any there was, of the authorities of the first school district of Pennsylvania was in the failure to discharge their public duty, to provide and maintain suitable and adequate accommodations for the public schools. That duty did not grow out of their right to control and manage this particular building or any other property, but was founded in the express provisions of the legislation which created the school district, provided the officers to represent it, and regulated the system of public education. That there could be no recovery from the school district for injuries to a pupil resulting from negligence, of this nature, upon the part of the officers of the district is definitely ruled by the authorities above cited. Even if the school district were liable under such circumstances, however, the city of Philadelphia would not be liable as a municipal corporation. The city in its corporate capacity had no voice in the selection of the officers whose negligence resulted in the accident, it could not remove them from office, nor could it supervise or control them in their management of the school property : Wharton v. School Directors, 42 Pa. 358; Commonwealth v. Davis, 199 Pa. 278 ; Board of Public Education v. Ransley, 209 Pa. 51. They were, in the discharge of their duty to repair the school buildings, wholly independent of the city authorities, and the city is not liable for an accident arising from their negligence : Alcorn v. City of Philadelphia, 44 Pa. 348; Ashby v. City of Erie, 85 Pa. 286. The fact that the legal title was in the city could not affect the determination of this question, for at the time of the alleged negligence the city did not and of right could not manage or control the property : Wunder v. McLean, 134 Pa. 334; Eisenbrey v. Penna. Co., 141 Pa. 566; Towt v. McCaulley Bros., 173 Pa. 314.

The appellee contends that the mere fact that the legal title was in the city imposes upon the municipality a liability to answer in damages for injuries resulting from the negligence

of the school authorities to keep the building in proper repair, and in support of this contention relies upon Briegel v. Philadelphia, 135 Pa. 451; Barthold v. Philadelphia, 154 Pa. 109 and Kies v. City of Erie, 169 Pa. 598. This contention might be answered by saying that it is not the mere holding of the legal title, but ownership with the right to control property, which fixes a party with liability for damages resulting from a neglect to repair, or the maintenance of a nuisance, as the authorities hereinbefore cited firmly establish. The nature of the title, to the property dedicated to various public uses, vested by the act of 1854 in the city of Philadelphia was considered in the case of the Western Saving Fund Society v. Philadelphia, 31 Pa. 175, and it was there held that the title acquired by the city was subject to all the trusts, limitations and conditions which before existed. The city is but a trustee, without the right of possession or power of control. The legislature might, by a general act, provide that the legal title to all school property should vest in the county within which the property was situated, or in the school districts; just as the Act of April 16, 1845, P. L. 502, vested the legal title to such property, which had formerly been in the county of Philadelphia, in " The controllers of the public schools of the first school district of Pennsylvania," and the Act of February 2, 1854, P. L. 21, transferred that legal title to the city of Philadelphia. The legislature by a general law might cause an entire change of the boundaries of the various school districts of the state, and the new districts would acquire title to the school property within their limits, but in the absence of a statute authorizing compensation to the old districts for the property thus lost, such compensation could not be demanded. Apart, however, from this barrier to the plaintiff's right to recover in the present action, the authorities relied upon do not sustain the right of the plaintiff to recover against the school district.

There was but one question decided in the case of Briegel v. Philadelphia, 135 Pa. 451, " A municipal corporation owning and occupying property for public purposes is as much subject as a private citizen to the usual rule, sic utere tuo ut alienum non lædas. The city is as much bound as an individual owner of a lot, to find an outlet for the water on it, without encroaching on his neighbor." There was in that case no question raised

as to the right of the city to control the property, and it seems
to have been assumed, by the learned counsel who represented
the city, that the municipal corporation appointed the officers
to carry on the work of education, and that they were agents
of the municipality.  The case may have been thus presented
for the reason that those representing the city were willing to
have decided, in the action then pending, the question of the
liability of the school district for an injury to private property
under the facts presented.  The injury complained of in that
case resulted from a privy well maintained upon the public
school ground, the offensive drainage from which passed into
the cellars of houses upon adjacent property owned by Briegel;
the referee found that the privy well was a nuisance, that it
caused the injury complained of, and awarded damages to the
plaintiff; the court below confirmed the report, and the Su-
preme Court affirmed the judgment.  That case is clearly dis-
tinguishable from Ford v. School District, 121 Pa. 543, and
the case with which we are now dealing.  A school district
has its public as well as its private rights and duties.  It may,
under its taxing power, impose a charge upon land, but it has
no right to cause filth to be discharged upon the property of a
neighbor.  The right of a municipality to maintain upon prem-
ises devoted to public use anything which became a nuisance
to surrounding property was considered by Judge SHARSWOOD
in Shuter v. Phila., 3 Philadelphia, 228, and he thus states
his conclusion: "If it is actually impossible to make such a
reservoir water-tight, the only result is that they must pay the
damage or become themselves owners of all the property within
reach of the influence of the nuisance."  The duty of the
school district to provide, maintain and keep in proper repair
adequate and suitable school buildings is an essential part of
its public duty, which they owe to all residents of the district,
to the owner of the property adjoining the public school build-
ing in no higher degree than to those whose residences are
most remote.  A failure to keep the buildings in sufficient re-
pair, whereby those lawfully in attendance upon the schools
are injured, is a breach of the public duty.  The school district,
as an owner, has no higher right of property than an individual,
the incidents of ownership are the same, the rights of private
property.  The adjoining owner may use his property in any

lawful manner, so long as he does not by the maintenance of a nuisance work an injury to the property of the school district, but if he does work such an injury the rights and remedies of the school authorities, in the absence of special statutory provision, are precisely the same as those of a private individual. The mutual and reciprocal rights and duties of owners of adjoining land are in no manner affected by the fact that one of the properties may be dedicated to a public use. Briegel v. Phila. came under that line of cases in which it has been held that the question was not one of negligence or no negligence, but of nuisance or no nuisance: Gavigan v. Refining Co., 186 Pa. 604; Haugh's Appeal, 102 Pa. 42. The fact that property is owned and controlled by a municipal or quasi municipal corporation or public charity, does not authorize the owner to maintain upon it a nuisance injurious to surrounding property, nor exempt such owner from liability to one who has suffered special injury from such nuisance. The injury which was redressed in Briegel's case was a wrong against his right of private property, and the duty which was violated by the school authorities was not connected with the exercise of their public governmental function, but was one which is always an incident of the ownership of land without regard to the use to which it is devoted; the case involved only the consideration of the rights of private property. There was such an actual invasion of the property of Briegel as to effectually impair its usefulness, and it is a question whether it was not a taking within the meaning of the Constitution of the United States: Pumpelly v. Green Bay Co., 80 U. S., 166. The distinction drawn by Mr. Justice MITCHELL in Briegel v. Philadelphia, between that case and Ford v. School District, is clearly recognized in Massachusetts. It was there held, in Hill v. Boston, 122 Mass. 344, that the municipality was not liable for injuries sustained in consequence of defects in buildings or grounds devoted to public school purposes, a pupil in a public school building having been injured by a defective stairway; while in Miles v. Worcester, 154 Mass. 511 (28 N. E. Repr. 676), it was held that for a private nuisance upon the school property which worked an injury to the land of an adjoining owner the municipality was liable. In the latter case it was said, distinguishing Hill v. Boston and kindred cases, " We are not aware,

however, that a private nuisance to property can be justified or
excused on that ground, . . . . the public use and the general
benefit will not justify such a nuisance to the property of an-
other."

The case of Barthold v. Philadelphia, presented the following
facts : a boy eleven years old was drowned in an old well filled
with water upon public grounds, open of access to all persons,
which had been acquired by the city about six months before
the accident, for the purpose of adding it to Fairmount Park.
Whether it had been actually added to the park does not clearly
appear.    The question whether the ground was controlled,
as well as owned, by the city was not even suggested.    The
only question raised by counsel was whether the deceased
should, under the evidence, be held guilty of contributory neg-
ligence as matter of law.    While the undertaking of a city to
maintain a public park is, generally speaking, for a public pur-
pose and the public may have a share in the enjoyment of its
advantages, the municipality may also have a peculiar local
interest therein and benefit therefrom, and municipal corpora-
tions, in such matters, come under a larger measure of liability,
than that applied to school districts in the discharge of their
governmental duties.    Glase v. Philadelphia, 169 Pa. 488;
was the case of an accident occurring on the roof of the water
works, which had been prepared by the city as a public prome-
nade.    The water works were a commercial undertaking of the
city, with regard to the management of which they are held to
the same degree of liability applied to an individual.    Mr. Jus-
tice DEAN, referring to the relation of the city to the place of
the accident, said : "It was not compelled to provide any such
place of rest and pleasure, but when it did so, and invited the
public to go upon it, clearly according to all the cases, it owed
to the public the duty of at least ordinary care."    In Kies v.
Erie City, 169 Pa. 598, the city had maintained a building the
doors of which were six feet wide, which swung outward and
when opened extended half way across the public sidewalk,
the usual and necessary use of the doors without negligence
was, by the jury, found to be dangerous to persons passing
along the pavement, the Supreme Court held that there was
sufficient evidence to support this finding and that the case
was for the jury.    That a device which, when used with ordi-

nary care, is dangerous to persons passing along the sidewalk of a public street, and which is maintained and controlled by the city, is a palpable violation of the municipal duty to keep the streets safe and convenient for travel would seem to be too clear for argument. None of the three cases, upon which the appellee relies, have any application to the question of the liability of a school district to answer for the negligence of the school officers in the discharge of their public duty.

The nature of the public school system, the relation of school district officers to the state and the nature of their duties, and the relation of the first school district of Pennsylvania and its officers to the City of Philadelphia, as a municipal corporation, constrain us to hold that under the evidence in this case the plaintiff was not entitled to recover.

The judgment is reversed.

RICE, P. J. and BEAVER, J., dissent.