## Lias, Appellant, v. Harmony Society Historical Association.

*Pennsylvania Historical Commission—Powers—Acts of July 25, 1913, P. L. 1265, and June 22, 1917, P. L. 624—Governmental functions — Agency — Contracts — Trespass — Death—Judgment non obstante veredicto—Article X, Section 1, Pennsylvania Constitution.*

Section 4 of the Act of July 25, 1913, P. L. 1265, as amended by the Act of June 22, 1917, P. L. 624, authorizes the Pennsylvania Historical Commission to undertake the preservation or restoration of ancient or historical public buildings or monuments connected with the history of Pennsylvania and to this end to contract for and on

behalf of the Commonwealth with historical societies and other agencies for the maintenance of such buildings and monuments.

When the state undertakes to educate the people generally by the maintenance of memorials of imported events, or men, or institutions, it is performing a public or governmental function.

When the Pennsylvania Historical Commission, pursuant to the Act of 1913 and 1917, contracts with a historical society for the preservation of historical public buildings, the latter becomes an agent of the state, and is not liable for the negligence of its officers, agents or employers in the exercise of its governmental function.

In an·action of trespass to recover damages for the death of a minor son, it appeared that the boy was drowned in a pond located in public park. It also appeared that the defendant, a corporation of the first-class was in control of the grounds by virtue of a contract with the Pennsylvania Historical Commission.

In such a case the court properly entered judgment non obstante veredicto in favor of the defendant.

Argued April 19, 1926. Appeal No. 13, April T., 1926, by plaintiffs, from judgment of C. P. Beaver County, September T., 1923, No. 449, in the case of Alton O. Lias and Ruby E. Lias, v. Harmony Society Historical Association, a Corporation, Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Trespass to recover damages for the death of a minor son. Before READER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff's in the sum of $1,500. Subsequently the court entered judgment for the defendant n. o. v. Plaintiff's appealed.

*Error assigned,* among others, was the entry of judgment n. o. v.

*James L. Hogan,* and with him *C. B. McCarter,* for appellants.—The defendant ·was not engaged in the performance of public functions: Briegel v. Philadelphia, 135 Pa. 451; Powers v. City of Philadelphia, 18

Pa. Superior Ct. Reports, page 621; Barthold v. City of Philadelphia, 154 Pa. page 109; Weber v. Harrisburg, 216 Pa. 117.

*Charles R. May,* and with him *Hice, Morrison and Bradshaw,* for appellee.—Defendant in its control and management of the park was the public agency in the performance of public or governmental functions: Ford v. School District, 121 Pa. 543; Board of Public Education v. Ranslay, 209 Pa. 51; Rosenblit v. Philadelphia, 28 Pa. Superior Ct. 587; Elliott v. Philadelphia, 75 Pa. 347; Wildoner v. Central Poor District of Luzerne County, 267 Pa. 375; Cousins v. Butler County, 73 Pa. Superior Ct. 86; Scibilia v. Philadelphia, 279 Pa. 549.

OPINION BY GAWTHROP, J., July 8, 1926:

Wayne E. Lias, a boy of eight, was drowned in a pond located on premises which were in the control and management of the defendant, and an action to recover damages was instituted by his father and mother. The allegation was that the defendant was negligent in the maintenance of the public park in which the accident happened. The trial resulted in a verdict for the plaintiffs, but the court below entered judgment for the defendant notwithstanding the verdict, and it is of this action that complaint is made on appeal.

The proper consideration of the questions presented to us requires a statement of the material facts. The accident happened in the Borough of Ambridge, Beaver County, which is located upon land formerly owned by the Harmony Society, a communistic organization with certain peculiar religious tenets. The society was an important factor in the development of Beaver County, and its history is notable in connection with the development of that county, as well as in the annals of the State of Pennsylvania. In the

year 1824, this society acquired a tract of land of about three thousand acres on the east bank of the Ohio River and established upon it the Village of Economy. This village was laid out in blocks on one of which was built a large house used for the dwelling of the trustees of the society, and several other buildings. This block was known as the Great House Block. That part of the block not occupied by the buildings was beautified by the laying out of walks and the planting of trees, flowers and shrubbery and by the construction in the center thereof of a pool of water about forty-four feet in diameter, in the center of which was a circular island about twenty feet in diameter, on which was erected a stone structure. The width of the water surrounding this island was about twelve feet and in it fishes were kept and pond lilies were planted. This block is now bounded by streets of the Borough of Ambridge and its dimensions are about three hundred by four hundred feet. The Harmony Society was dissolved about 1905 and the land was conveyed to Beaver County Land Company. In the year 1910 quo warranto proceedings were instituted in the Court of Common Pleas of Beaver County for the purpose of escheating certain property formerly belonging to the Harmony Society to the Commonwealth of Pennsylvania. This proceeding was adjusted and in the year 1916 the Great House Block, and another block of land formerly belonging to the Harmony Society and known as the Music Hall Block were conveyed to the Commonwealth. By an act of assembly approved July 21, 1919, P. L. 1086, the Commonwealth dedicated these two blocks of land to the use of the public to the end that said parcels of land, with the buildings and other improvements thereon, be restored and preserved and maintained forever as a public place, park and memorial under the name of Old Economy, as nearly as possible in their original condition, for the enjoyment and instruction of the people of the Commonwealth, and by

the same act delegated the preservation, restoration, custody and maintenance thereof to the Pennsylvania Historical Commission in conformity with the provisions of the act approved July 25, 1913. Sec. 4 of the latter act, as amended by the Act of June 22, 1917, P. L. 624, authorizes the Pennsylvania Historical Commission to undertake the preservation or restoration of ancient or historic public buildings or monuments connected with the history of Pennsylvania and to this end to contract for and on behalf of the Commonwealth with historical societies and other agencies for the maintenance of such buildings and monuments. Pursuant to the power conferred upon it by statute, the Pennsylvania Historical Commission entered into an agreement with the defendant for the restoration, preservation and maintenance of the property conveyed to the Commonwealth as above stated. The defendant is a corporation, not for profit, incorporated by the Court of Common Pleas of Beaver County for the purpose of fostering and preserving the history, traditions and manners of the Harmony Society. It has no real or personal property. The provisions of the contract between the Pennsylvania Historical Commission and the defendant, which are material to the present inquiry, are that the defendant shall: preserve, restore, care for, maintain and manage the premises to the end of carrying out the purpose for which said pieces of real estate, with the buildings thereon erected, were dedicated to public use, by restoring the premises as nearly as possible to their original condition; acquire and preserve upon the premises historical collections of furniture, furnishings, books and other items of personal property formerly belonging to the Harmony Society and other objects of historic or educational interest; provide quarters and facilities for such social and philanthropic interest of the community as can be accommodated on the premises consistently with the purposes of their

dedication.  The right is conferred of charging suitable admission fees to the buildings and grounds, and of leasing such portions of the premises as can be leased without detriment to the purpose for which the premises have been dedicated, with the right of receiving and collecting the rentals therefrom.  The defendant is obligated to account for, apply and use the funds received by it under the terms of the agreement for the purpose stated above.  The Pennsylvania Historical Commission reserved the right to terminate the agreement and take possession of the premises at any time it may so desire.

The defendant took possession of the premises under the above mentioned contract and was administering it strictly in accordance with the terms thereof, and solely for the uses and purposes designated in the contract and in the act of assembly under which it was drawn, at the time the child was drowned.  The pool, located about the center of the Great House Block, had been repaired and filled with water to a depth of about four feet.  Gold fish were kept therein.  A guard rail, consisting of an iron pipe, was erected on the inner edge of the concrete walk which surrounded the pond.  The Great House Block was surrounded on all sides either by the walls of the buildings erected thereon or by fences.  On the four sides of the block there were gates in the fences, all of which were equipped with some means of fastening.  The defendant charged a fee for admission to the Great House, but no fee was charged for entering the park.  On behalf of the plaintiffs there was evidence that the gates were usually open and that children were permitted to play in the park; that on the day of the accident the child and another boy were playing therein; that about four P. M. the caretaker told the boys to go home and they went off of the premises; that shortly before five o'clock P. M. the mother of the boy saw him come into his home but did not see him afterward.  Plaintiffs'

house is located on 13th Street which bounds the Great House Block. The body of the little boy was found in the pond early on the following morning. There was no evidence to indicate the manner in which the boy got into the pond.

The contention of the appellants is that the learned judge of the court below fell into error in holding that the defendant was exempted from liability for negligence in its maintenance of the park, first, on the ground that it was acting as an agent of the Commonwealth in discharging a public or governmental function, and second, on the ground that it was performing the functions of a public charity.

It is manifest that the dedication by the Commonwealth of the land, known as Old Economy, to the use of the public by the Act of 1919 was for a purely public purpose which is educational in character. Education has been said to be a great public charity: Ford v. The School District, 121 Pa. 543. The providing of means of education, the creation and administration of a system of schools, has come to be regarded as a public governmental function: Board of Public Education v. Ransley, 209 Pa. 51. Art. X, Sec. 1, of our Constitution requires the legislature to provide for the maintenance and support of a thorough and sufficient system of public schools. As stated by the learned trial judge, a system of schools is not the only method of education. The maintenance of memorials of important events, or men, or institutions, is often the most impressive and effective means of education. It is the policy of our State to establish memorials for the education of our people. When it undertakes to educate the people generally by this method, it is performing a public or governmental function, as well as when it establishes a public school system. The declared purpose of the Act of 1919 was to dedicate, preserve and maintain forever the lands of the Harmony Society for the enjoyment and "instruction of the

people of this Commonwealth." The Commonwealth by delegating the preservation, custody and maintenance of the memorial to the Pennsylvania Historical Commission, and through it, by the authorized power to contract, to the defendant, made the latter, while it is in control thereof, its agent. It is well settled that the state is not liable for the negligence of its officers and agents: Collins v. Com., 262 Pa. 572. Since the decision in Ford v. The School District, supra, it has been settled in this state that a school district is merely a public agency of the Commonwealth, exercising a public or governmental function and is not liable for the negligence of its officers, agents or employees in the exercise of this function. To the same effect are Rosenblit v. Philadelphia, 28 Pa. Superior Ct. 587, and Board of Public Education v. Ransley, supra. The various agencies or instrumentalities of the state to which this principle of immunity from liability for the negligence has been applied by our Supreme Court and this Court are referred to in Cousins v. Butler County, 73 Pa. Superior Ct. 86. In the recent decision in Scibilia v. Philadelphia, 279 Pa. 549, this principle was applied to the case of employees of the city who were engaged in the collection and removal of ashes, this being held to be a governmental function in the interest of the protection of the public health. We are clear that under the undisputed facts in this case the defendant was engaged in rendering service of "a public character, for a high order of public benefit," for the state and is entitled to the benefit of the rule of law exempting agencies of the state from liability for negligence in the performance of functions of government delegated to them by the state. None of the cases cited and relied upon by the appellants have any application to the question of the liability of an agent of the Commonwealth exercising governmental functions for negligence in the discharge of those functions. In Briegel v. Philadelphia, 135 Pa. 451, the

question was whether a municipal corporation owning and occupying property for public purposes was liable to an adjoining property owner for the maintenance of a nuisance on its land. This conclusion renders our consideration of the other ground on which the judgment was entered unnecessary.

All of the assignments of error are overruled and the judgment is affirmed.