## Tate v. LaBrum

Before Sloane, P. J., Gleeson and McClanaghan, JJ.

*E. G. Bauer, Jr.*, for petitioners.

*J. H. Feldman* and *R. W. Williams*, for respondents.

SLOANE, P. J., October 25, 1963.—This petition for a declaratory judgment seeks our declaration and judgment of validity or invalidity of a recent Act of Assembly, Act No. 338, 53 PS §16101-16103. In brief, the act approved August 9, 1963, and effective immediately, authorizes the city council of any city of the first class (Philadelphia is the only one in Pennsylvania) to impose taxes for school purposes, to ". . . be levied, assessed and collected in accordance with all provisions, restrictions, limitations, rights of notice and appeal as are applicable to like taxes imposed for city purposes": section 2 of the act.

Two questions arise: One as to our power to decide the matter in its present posture; in a word, do we have jurisdiction? And the second, is the act constitutional or unconstitutional? Plainly, the first must be answered first, for, if we do not have jurisdiction, if we are not invested with judicial authority, we may not act.

We have no authority or power to act, except as we are authorized through the Constitution and through proper legislative enactments: McWilliams v. McCabe, 406 Pa. 644; Upholsterers' International Union of North America v. United Furniture Workers of America, C. I. O., 356 Pa. 469. We cannot give advisory opinions: Finnegan Appeal, 366 Pa. 6. And here our decision would be advisory. A governmental official, the Mayor of Philadelphia, presents a question of law not raised by any concrete case of law, and he seeks our advice and opinion. This we cannot give.

Section 6 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, sec. 6, 12 PS §836, provides that relief by a declaratory judgment may be granted in all civil cases where:

1. An actual controversy exists between contending parties, or

2. Where the court is satisfied that antagonistic claims are present between the parties which indicate imminent and inevitable litigation.

The remainder of the statute, as amended, refers to those situations involving legal relations, the status, rights or privileges between parties which are challenged or denied by an adversary party who also asserts a concrete interest therein. These situations are clearly not involved in this litigation; no question is raised as to the position or status of any of the parties. Regardless of any decision we might render, the mayor will still be the mayor and the board of education will remain intact, as will the city and the intervening taxpayer.

Neither are the recent amendments in point: Act No. 161, of 1963, 12 PS §836. Though the language of the amendments is broad in its reference to tax legislation, our search of the legislative origin of these amendments shows that they were enacted to allow declaratory relief where a person claims or denies a status defined by a taxing statute; e.g. "wife," "child." This becomes evident since the amendment originated as a companion bill drafted by the Estates Advisory Committee of the Joint State Government Commission and that Act No. 350, 20 PS §2080.707, passed on August 13, 1963, amended the Orphans' Court Act of August 10, 1951, P. L. 1163, in substantially similar language.

Unless, then, the present petition slides into one or both of the enumerated sections, we cannot pass or act upon the petition.

Although both the complaint of the mayor and the answer of the board of education alike aver the presence of an actual controversy, this averment alone cannot establish what, in fact, does not exist. What exists between the parties is not a controversy in a legal

sense, though indeed there is a disputatious difference between the two. What exists is a difference of opinion as to the constitutionality of Act No. 338, the mayor and the city alleging that it is unconstitutional and the board alleging it is constitutional. But there is serious doubt whether these two parties can become legal contestants involving the constitutionality of Act No. 338. Though it might be argued (see Board of Education of the First School District of Pa. v. Ransley, 209 Pa. 51), that the board could enjoin the city from interfering in a board function, no board function is here in controversy. And, we are aware of no authority that would permit the board to maintain an action of mandamus against city council to compel the enactment of an ordinance pursuant to Act No. 338, since the enactment of an ordinance and the manner thereof is a matter of final discretion in the legislature: Erie Firefighters Local No. 293 v. Gardner, Mayor, 26 D. & C. 2d 327, affirmed per curiam in 406 Pa. 395.

Consequently, the parties to this action are not contending parties, and there is no real controversy. There is merely a disagreement of opinion on the issue of constitutionality of Act No. 338. If we were to construe this difference or disagreement to be a "controversy" within the meaning of section 6 of the Declaratory Judgment Act, then we are open to a prayer for an advisory opinion whenever an act is adopted, predicated on the inevitable emergence of contrary views as to constitutionality of every piece of enacted legislation.

Any merit to the city's contention that this court has jurisdiction would lie in the second part of section 6 of the Declaratory Judgment Act, wherein inevitability of litigation is declared an acceptable reason for the discretionary judicial pronouncement of a declaratory judgment. But, we confess inability to discover the imminence of litigation in the instant case. To be sure,

we have a taxpayer who avers that he will, if and when city council does pass an ordinance, challenge the constitutionality thereof and also of Act No. 338.* But the assumption upon which such averment rests is that city council will take some legislative action under Act No. 338. If past history is any indication, city council might not enact an ordinance under Act No. 338. City council may fail to act since Act No. 338 says city council "may" enact such an ordinance and not that council "must" or "shall."

Should city council simply not enact a school district taxing ordinance we are unable to see the availability of a judicial remedy on the part of the school board to compel such action. Thus, were we to decide that we have jurisdiction to issue a declaratory judgment, we may well discover that what we have done is to hand down an advisory opinion on circumstances that never will occur.

In Kariher's Petition (No. 1), 284 Pa. 455, the Supreme Court gave us a guideline for determining when a declaratory judgment should be granted.

". . . jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, *or the ripening seeds of one*, exists between parties, all of whom are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy . . .

". . . *Moreover, in a declaratory judgment proceeding the court will not decide future rights in anticipation of an event which may not happen*, but, just as in the ordinary executory action, it will wait until the event actually takes place, unless special circumstances

---

* Floyd L. Logan, a taxpayer and resident of the City of Philadelphia, has filed a petition to intervene in the present case. In view of our decision, we find it unnecessary to pass upon the question of intervention.

appear which warrant an immediate decision, as, for instance, where present rights depend on the declaration sought by plaintiff; . . .": pages 471, 472 (Italics supplied).

In Eureka Casualty Company v. Henderson, 371 Pa. 587, the Supreme Court refused a prayer for a declaratory judgment, again reiterating the basic proposition that the courts will not decide future rights in anticipation of an event which may not happen.

There is no present controversy, since city council has not acted and may not act. The crucial issue here is whether a controversy has emerged and, if so, if the record is clear and certain enough to warrant the intervention of the court at this particular time. The answer must be negative, for any decision we might render would be based on the assumption that city council will pass a taxing ordinance. There is no basis in fact before us which warrants such an assumption.

The recent case of Philadelphia v. Philadelphia Transportation Company, 404 Pa. 282, is to the point. There the city sought, by a petition for a declaratory judgment, a judicial construction of an option to purchase the PTC. The formula contained in the option for determining the purchase price was ambiguous, with the PTC claiming that, using the formula, the price was a certain sum more than the figure arrived at by the city, using the same formula. In clear language, the court declined jurisdiction, since the city did not aver a present or future exercise of the option. The city sought merely an advisory opinion. The court pointed up the absence of the city's intention to exercise the option. The court indicated that any judicial interpretation of the option price would have to await the actual enactment of an ordinance exercising the option, stating, "Unless and until the City takes such action, no justiciable controversy exists under the Declaratory Judgment Act": pages 287, 288.

Here, also, we have the city seeking judicial advice on action it may never take. Certainly it is possible that city council will elect to do nothing and await further or different action by the legislature.

The present situation is not analogous to that found in Schultz v. Philadelphia, 385 Pa. 69, where a taxpayer in an equity action was granted an injunction restraining the City of Philadelphia from acting pursuant to an amended ordinance which had neither been properly advertised nor upon which public hearings had been held. Though the court did discuss the constitutionality of the ordinance, in addition to its procedural defects, such a discussion was predicated on the fact that city council had taken affirmative action in passing the amended ordinance. This fact clearly distinguishes Schultz from our present case since no such affirmative action by the city has been taken to date. City council has done nothing with regard to Act No. 338.

We realize that the situation bristles with the need for action. The interests of the children of Philadelphia are at stake, and no one should dare hazard their education and growth. We can think of no proposition more immediately necessary to our public welfare than adequate educational facilities for the youth of Philadelphia. However, we are advised that approximately $133,000,000 is available for public education in Philadelphia for the coming fiscal year and if there is need for more, and there well may be need for more, it is not for the court to solve this fiscal problem. It is for the legislature for city council or both.

Our decision is not a quibble or an overemphasis upon technicalities. It is not a show of rigidity of ruling dogma. We agree with Mr. Justice Harlan, of the Supreme Court of the United States, that it is a wrong notion, a notion "that holds subtle capacity for serious mischief," to think "that all deficiencies in our society

which have failed of correction by other means should find a cure in the courts": 49 A. B. A. Journal 943, October, 1963.

The petition for a declaratory judgment is dismissed.